210 N.J. Super. 574 (1986)
510 A.2d 281
ANNE FUCHILLA, PLAINTIFF-APPELLANT,
v.
WILLIAM A. LAYMAN, M.D., UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY AND THE BOARD OF TRUSTEES OF THE UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1986.
Decided: May 27, 1986.
*577 Before Judges DREIER, BILDER and GRUCCIO.
James M. Burns argued the cause for appellant (Wilentz, Goldman & Spitzer, attorneys; James M. Burns of counsel and on the brief).
Douglass L. Derry, Deputy Attorney General argued the cause for respondents (W. Cary Edwards, Attorney General of New Jersey, attorney, James J. Ciancia, Assistant Attorney General, of counsel; Douglass L. Derry, on the brief).
W. Cary Edwards, Attorney General of New Jersey filed a brief amicus curiae for the Division on Civil Rights (Andrea M. Silkowitz, Deputy Attorney General, of counsel; Susan L. Reisner, Deputy Attorney General, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff has appealed from a Law Division summary judgment dismissing her claims against her public employer, The University of Medicine and Dentistry of New Jersey (UMDNJ). She demanded damages for sexual harassment, asserting violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., and the federal Civil Rights Act, 42 U.S.C.A. § 1983, as well as equitable relief. Plaintiff apparently failed, however, to comply with the 90-day notice provision of *578 the Tort Claims Act, N.J.S.A. 59:8-8.[1] Plaintiff asserted in the trial court that the Tort Claims Act filing provisions were inapplicable to claims made under both the Law Against Discrimination and 42 U.S.C.A. § 1983. The trial judge held to the contrary and dismissed her complaint. We disagree and reverse.

I
The Law Against Discrimination is directed at ending discrimination in employment and public accommodations, N.J.S.A. 10:5-3 and 10:5-4. The Act sets forth a detailed mechanism of procedures and remedies and envisions either utilization of conciliation and administrative law procedures or a Superior Court action, each generally exclusive of the other while pending. N.J.S.A. 10:5-13, 10:5-27.[2]
N.J.S.A. 59:1-2, the legislative preamble to the Tort Claims Act, declares "to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act...." (Emphasis added). The Act is broader in scope than this initial legislative declaration, in that it includes redress for an "injury," defined in N.J.S.A. 59:1-3 as "death, injury to a person, damage to or loss of property or any other injury that a person may suffer that would be actionable *579 if inflicted by a private person." To determine whether the Legislature intended that a violation of the Law Against Discrimination would constitute an "injury" subject to the Tort Claims Act, we must analyze both the Law Against Discrimination and the Tort Claims Act.
We find that a discrimination claim is dissimilar to those envisioned by the Legislature to be included within the coverage of the Tort Claims Act.[3] In Lloyd v. Stone Harbor, 179 N.J. Super. 496, 511-12 (Ch.Div. 1981), Judge Haines properly found that a tort claim based upon a violation of the New Jersey Constitution was subject to the notice provision of the Tort Claims Act. Such a finding, however, does not lead to the conclusion that a Law Against Discrimination claim is to be similarly constrained. The Law Against Discrimination's self-contained notice provisions, conciliation periods, mutual exclusivity of the judicial or administrative remedy while such remedy is being pursued, and the usual mixed injunctive and compensatory relief sought in an anti-discrimination suit govern those claims to the exclusion of any other time or notice provisions, including those of the Tort Claims Act.
We note also, that the Tort Claims Act provides no immunity for willful or malicious acts caused either by the employee or the entity itself. The Tort Claims Act in N.J.S.A. 59:3-14a and b permits personal liability and full recovery against a public employee for the results of actual malice or willful misconduct. N.J.S.A. 59:2-10 forbids only vicarious liability for such conduct on the part of a public entity. Discriminatory conduct actionable under the Law Against Discrimination is more akin to the malicious or willful acts exempted from the Tort Claims Act than the negligently or similarly inflicted injuries covered thereby.
*580 We realize that our decision is in conflict with this court's recent opinion in Healey v. Dover Tp., 208 N.J. Super. 679 (App.Div. 1986). Although it might be possible to distinguish Healey, we would have to strain to do so.[4] We, therefore, must indicate our disagreement with the result there reached.
Our decision is buttressed by Snipes v. Bakersfield, 145 Cal. App.3d 861, 193 Cal. Rptr. 760 (Ct.App. 1983), interpreting the California Fair Employment and Housing Act. When a similar claim was made that plaintiff had failed to file a timely notice under the California Tort Claims Act, the California Court of Appeals agreed that such actions were exempted from the Tort Claims Act's notice requirements. 193 Cal. Rptr. at 762-765. See also Garcia v. Los Angeles Unified School Dist., 173 Cal. App.3d 701, 219 Cal. Rptr. 544, 549-50 (Ct.App. 1985). We recognize that the administrative remedy in California was exclusive, whereas as noted earlier, a New Jersey plaintiff has the choice between administrative and judicial relief. However, since claims in New Jersey may be discontinued in one forum and then pursued in the other, the exclusivity of the California remedy should not dilute the persuasiveness of the California authorities.

II
The trial judge generally barred "plaintiff's claims." By this we must assume that he intended to bar not only the Law Against Discrimination claims discussed in part I of this opinion, but also the Federal Civil Rights claims authorized by 42 U.S.C.A. § 1983.
*581 Defendants raise a threshold question which, although not argued below, we elect to consider. It could provide a basis for sustaining the trial judge's action, since it would render unnecessary a substantive decision on the Tort Claims Act issue. Defendants contend that neither the University nor its Board of Trustees qualifies as a "person" within the meaning of § 1983 which by its terms only forbids denial of a citizen's civil rights by any "person." Thus defendants argue that the University and Trustees are not subject to liability under federal law."
Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held the State and its subdivisions free from liability under § 1983. Monroe was overruled, however, insofar as local agencies were concerned in Monell v. N.Y. City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which adopted the rule that local governing bodies and local officials joined in their official capacities could be sued for monetary, declaratory, or injunctive relief. We need not resolve the jurisdictional question of whether Monell signalled a complete abrogation of state immunity from § 1983 actions, even in state courts. See Wolcher, "Sovereign Immunity and The Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violation," 61 Cal.L.Rev. 189 (1981). That issue is of no moment here, since it is apparent from the statutes controlling the organization of the UMDNJ, N.J.S.A. 18A:64G-1 et seq., that it is an autonomous governmental agency rather than an alter ego of the State.[5] UMDMJ's predecessor, the College of Medicine and Dentistry, was held to *582 be autonomous and hence not a State agency in DeAngelis v. Addonizio, 103 N.J. Super. 238, 253 (Law Div. 1968). After the College's merger with the Rutgers School of Medicine in 1970 the new entity became known as the University of Medicine and Dentistry of New Jersey. The key attributes noted in DeAngelis weighing in favor of independence from direct State control are still present in the merged institution.
We next turn to the issue of whether the Tort Claims Act notice requirements may be applied to bar a § 1983 claim. As noted in Brown v. United States, 742 F.2d 1498, 1509 n. 6 (D.C. Cir.1984), cert. den. sub nom. District of Columbia v. Brown, ___ U.S. ___, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985), "the overwhelming majority of federal and state courts that have confronted the issue" have precluded state tort claims notice provisions from barring federal § 1983 rights.
On the other hand, there is no question that a reasonable and generally applicable statute of limitations may be applied to determine whether a § 1983 claim is stale. Wilson v. Garcia, 471 U.S. ___, 105 S.Ct. 1938, 85 L.Ed.2d 254, 260 (1985). As noted in Brown, however, a notice of claim is an impermissible precondition to suit as opposed to a limitation of action. 742 F.2d at 1508. To borrow such a state restriction would be to add an unwarranted element to a federal right of action. Ibid. Thus in Brown the court held that the plaintiff's noncompliance with the notice-of-claim provision was no bar to his federal remedy. Id. at 1509-10. See also Williams v. Allen, 616 F. Supp. 653, 658 (E.D.N.Y. 1985); Burroughs v. Holiday Inn, 606 F. Supp. 629, 630 (W.D.N.Y. 1985); Spencer v. Seagoville, 700 S.W.2d 953, 955-56 (Tex. App. 1985); Firestone v. Fritz, 119 Ill. App.3d 685, 75 Ill.Dec. 83, 87, 456 N.E.2d 904, 908 (Ill. App. 1983).
A minority view is represented by decisions from Indiana and New York. See Indiana Dept. of Public Welfare v. Clark, 478 N.E.2d 699, 702 (Ind. App. 1985) (terming the notice provision "a procedural precondition to sue" which "overrides the procedural *583 framework of § 1983 when the litigant chooses a state court forum"), and Mills v. Monroe Cty., 59 N.Y.2d 307, 451 N.E.2d 456, 464 N.Y.S.2d 709, 711 (Ct.App. 1983), cert. den. 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983). The New York departure from the majority rule, however, has been explained as turning on the unusual flexibility of the New York notice-of-claim clause providing for waiver, if necessary for the public interest. Brown, supra, 742 F.2d at 1509 n. 6; Williams, supra, 616 F. Supp. at 657-68.
The only New Jersey authority directly on point is Lloyd v. Stone Harbor, supra, 179 N.J. Super. at 512, in which Judge Haines correctly held that a § 1983 claim is "unaffected by [plaintiff's] failure to give the notice required by the Tort Claims Act." And see T & M Homes, Inc. v. Mansfield Tp., 162 N.J. Super. 497, 506 (Law Div. 1978) where Judge Haines also had noted that federal
... rights cannot be denied by the passage of state legislation. If the contrary were true, every state could deprive its citizens of the very rights which enactments of the Federal Congress are designed to protect.
Compare Peters v. Hopewell Tp., 534 F. Supp. 1324, 1338 (D.N.J. 1982), aff'd without opinion 729 F.2d 1448, (3d Cir.1984).
In Wilson v. Garcia, supra, 471 U.S. at ___, 105 S.Ct. at 1946, 85 L.Ed.2d at 266, the Court made clear that in interpreting a § 1983 claim a state tort claims act period of limitations is inappropriate and the state's general statute of limitations governing personal injury actions should be applied. The court declared:
... [W]e are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials. It was the very ineffectiveness of state remedies that led Congress to enact the Civil Rights Act in the first place. Congress therefore intended that the remedy provided in § 1983 be independently enforceable whether or not it duplicates a parallel state remedy. [Id. at 1949, 85 L.Ed.2d at 268]
It is apparent to us that Wilson confirms the earlier New Jersey authority in limiting the effect of state statutes upon *584 § 1983 claims to the borrowing of the general statute of limitations, and precludes the application of the Tort Claims Act in any respect. Plaintiff's § 1983 claim should not have been barred by her failure to file a timely notice-of-claim.

III
Independent of her request for relief under the Law Against Discrimination and 42 U.S.C.A. § 1983, plaintiff also sought equitable relief. She sought an injunction against the discrimination she alleged she had received as well as damages for lost wages and benefits. N.J.S.A. 59:1-4 provides:
Nothing in this act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees.
This section bars application of the Act to cases where equitable relief is sought. Blazer Corp. v. N.J. Sports & Exposition Auth., 195 N.J. Super. 542, 549 (Law Div. 1984), aff'd 199 N.J. Super. 107 (App.Div. 1985); Lloyd v. Stone Harbor, supra, 179 N.J. Super. at 512.

IV
Given our conclusions concerning the present justiciability of plaintiff's claims for relief under the Law Against Discrimination and 42 U.S.C.A. § 1983 and for equitable remedies, we need not reach the issue of the timeliness of her claims under the Tort Claims Act itself. We note merely that the last act of the University or Trustees asserted to have been discriminatory was the November 1982 request for plaintiff to leave, allegedly in retaliation for her previous complaints. However, the substance of her discrimination charges appears to be the course of conduct by defendant Layman culminating in plaintiff's transfer in July 1982. Thus her August 1983 notice would have been beyond the one-year extended date of N.J.S.A. 59:8-9.
The judgment dismissing plaintiff's complaint is reversed and the matter is remanded for trial.
NOTES
[1] As her notice of claim was not filed until August 1983 and the last discriminatory act was alleged to have occurred more than a year prior thereto, even the extended one-year notice provision of N.J.S.A. 59:8-9 would have been inapplicable, as discussed infra. After the extended period the courts are without jurisdiction to permit late notice. Myers v. Medford Lakes Bd. of Ed., 199 N.J. Super. 511, 516 (App.Div. 1985); Madej v. Doe, 194 N.J. Super. 580, 589 (Law Div. 1984).
[2] The Attorney General on behalf of the Division on Civil Rights has, with leave granted, filed a brief as amicus curiae. The brief solely addresses whether the Tort Claims Act should apply to administrative complaints. The Division correctly argues that any such application would hinder its enforcement powers. In view of our disposition of defendant's claims, however, we need not further discuss these arguments.
[3] Although the anti-discrimination statute was amended specifically to include public entities only in 1977 (L. 1977, c. 122, N.J.S.A. 10:5-5e), the amended Act is construable as declarative of the original provisions in this regard.
[4] It might be argued that the sex discrimination in Healey was unintentional and non-malicious, but that the sexual harassment in the case before us was clearly beyond the immunities of the Tort Claims Act. Yet we choose not to rest our decision on such a debatable distinction. Rather, our decision is based upon the general inapplicability of the Tort Claims Act to claims properly initiated pursuant to the Law Against Discrimination.
[5] Were UMDNJ an "alter ego" or agency of State government, we would be faced squarely with the issue of whether § 1983 actions are inapplicable to the State itself. Although Monell left open the issue of whether the State itself may be included as a proper party defendant, a negative conclusion was reached by the Seventh Circuit in Toledo, Peoria LW.R. Co. v. State of Illinois, 744 F.2d 1296, 1297 (7th Cir.1984). (See Id. at 1298-99 for a survey of numerous authorities). That court held, however, that a "state official acting under color of state authority may be treated as a `person' under section 1983." Id. at 1299.